# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 21, 2013 Session

## STATE OF TENNESSEE v. JARRETT INMAN

### Appeal from the Criminal Court for Roane County
### Nos. 13654, 14023    E. Eugene Eblen, Judge

---

### No. E2010-02431-CCA-R3-CD - Filed October 18, 2013

---

The petitioner, Jarrett Inman, pled guilty in the Roane County Criminal Court to rape of a child, a Class A felony, and was sentenced to seventeen years at 100% in the Department of Correction. On appeal, he argues that the trial court erred by denying his motion to withdraw his guilty plea and his petition for writ of error coram nobis based on newly discovered evidence of the victim's recantation. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

Robert L. Vogel, Knoxville, Tennessee, for the appellant, Jarrett Inman.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Russell Johnson, District Attorney General; and Frank Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On June 18, 2007, the Roane County Grand Jury indicted the petitioner for the rape of a child based on his sexual penetration of a twelve-year-old neighbor, J. R.[1] On December 9, 2008, the petitioner entered an open guilty plea to the offense in exchange for the dismissal of pending theft and felony drug charges against him, and on April 16, 2009, the trial court

---

[1] Pursuant to the policy of this court, we refer to the minor victim by her initials only.

sentenced him to seventeen years in the Department of Correction at 100% as a child rapist.

On July 10, 2009, and again on August 21, 2009, the petitioner sent *pro se* letters to the trial court requesting that he be allowed to withdraw his guilty plea. In support, he cited his unhappiness with his trial counsel and his belief that she had misled him about the consequences of his plea. At the hearing on that motion, at which the petitioner was represented by counsel, the petitioner testified that he "felt like [he] was innocent" and that he had been "bullied . . . into this plea." The petitioner said that he had learned that his trial counsel, who met with him only twice before he entered his plea, had since been suspended from the practice of law "for not having the right requirements; hours." He stated that trial counsel was assisted by co-counsel who was present for both of his meetings with trial counsel. At their first meeting, which lasted about thirty minutes, counsel discussed the witnesses and their possible trial strategy. The petitioner stated that he told counsel that he was not the person who was in the room with the underage victim and gave them the name of a witness, Shawna Russell, who, according to the petitioner, would have testified that she identified him as the perpetrator because she believed he was only seventeen and she was attempting to cover for the real perpetrator, who was twenty-three. The petitioner testified that he attempted to call Russell while at co-counsel's office but did not receive an answer. According to his testimony, neither of his counsel attempted to locate or talk to her or any other witnesses.

The petitioner testified that at their second meeting, which lasted approximately three hours and took place in the courtroom, counsel abandoned any discussion of trial strategy and instead kept trying to convince him to accept the plea deal. He said that counsel told him that he faced more time if convicted on the drug charges than he did if convicted of the rape charge and that he could receive a total of sixty-five years if he did not accept the plea offer. The petitioner stated that counsel "scared [him]" with such talk, which is why he ultimately agreed to plead guilty. The petitioner acknowledged that he signed the guilty plea agreement but said he did not know what it was. He said neither of his counsel discussed with him the details of the plea agreement or the rights he would be waiving by pleading guilty. He also said that when the trial court asked him if he understood that he did not have to enter a guilty plea, he tried to tell trial counsel that he did not want to take the plea, but she instead told him just to answer "yes" to the judge.

On cross-examination, the petitioner acknowledged that co-counsel discussed with him the law regarding child rape and the fact that it was a strict liability crime in which his belief about the victim's age was irrelevant. He further acknowledged that counsel reviewed with him the State's evidence in the case and discussed possible ways to defend him against the charge.

Co-counsel testified that he had been practicing criminal law for fourteen years and that the trial court asked him to sit as a sort of informal "second chair" on the case because trial counsel did not have a lot of experience with child rape cases. Co-counsel explained that he agreed to do so because he had grown up in the same town with the petitioner and knew the petitioner's family, who were "good people." He said he initially met with trial counsel alone for an hour or two, instructing her on the law of child rape, discussing the case, and reviewing with her the discovery materials, which included the nineteen-year-old petitioner's statement acknowledging that he had sexual contact with the twelve-year-old victim. The two of them then met with the petitioner at co-counsel's office, where co-counsel explained to the petitioner in great depth the strict liability nature of child rape. To aid in his explanation, he provided the petitioner with copies of the statute and with relevant case law. Co-counsel testified that at the end of that first meeting the petitioner left, saying that counsel needed to talk to Shawna Russell, a witness. He said he replied that they would talk to anyone the petitioner wanted them to and that the petitioner should give them their names and numbers. He did not know what kind of information the petitioner might have given trial counsel, but he never heard back from the petitioner with respect to the names and numbers of any potential witnesses.

Co-counsel testified that he drafted several motions for trial counsel to file, including a motion to suppress the petitioner's statement. He did not, however, think they had much of a chance of success given the petitioner's age, intelligence and education level, and ability to read and write. Co-counsel said that on the day that the hearing on the various motions was scheduled, the State approached trial counsel with a plea bargain offer in which the petitioner's pending drug and theft charges would be dismissed. Co-counsel testified that they discussed the pros and cons of the offer with the petitioner, including the fact that some of the sentences for his felonies would have to be served consecutively. He said they pointed out that although the petitioner would have to serve his child rape sentence at 100% if he accepted the deal, it was "a whole lot better than . . . losing [his] whole life" if he went to trial and was convicted of all the offenses and received consecutive sentencing. As he recalled, the petitioner, who was sitting with his head in his hands, asked for a minute to think about the offer before agreeing to accept the plea deal. Co-counsel said he did not push the petitioner to accept the offer and that, to his knowledge, trial counsel did not either.

On cross-examination, co-counsel testified that he was not appointed and received no pay for his work on the case but instead volunteered his time due to the fact that he knew the petitioner's family and wanted to help. He said he explained the strict liability aspect of the child rape law to trial counsel at their first meeting, not because he thought she did not know it, but because the charges were so serious and he wanted "to start at ground zero" and not "take any chances." He acknowledged that he was not privy to all the conversations that took place between the petitioner and trial counsel. He said he had no recollection of the

petitioner's having turned to talk to trial counsel during the guilty plea colloquy, but he was not standing with the petitioner and it was possible he did so. Finally, he acknowledged that he was aware that trial counsel lost her license to practice law sometime after the petitioner's sentencing hearing. He said, however, that he was not familiar with any of the circumstances involved.

On redirect examination, co-counsel testified that he informed the petitioner that it was unlikely they would be successful with their motion to suppress his statement.

At the conclusion of the hearing, the trial court denied the motion to withdraw the guilty plea, finding that the petitioner received effective assistance of counsel and that his guilty plea was knowing and voluntary. On November 19, 2010, the petitioner filed a timely notice of appeal of the trial court's denial of his motion to withdraw his plea.

Subsequently, on November 9, 2011, the petitioner filed a petition for writ of error coram nobis alleging newly discovered evidence. Specifically, he alleged that sometime in January 2011 "[r]elatives or agents" of the petitioner had discovered a series of "Facebook" postings by the victim, which were posted after the petitioner pled guilty, in which the victim made statements indicating that she and her mother had "lied about the culpability of the [petitioner]." The petitioner asserted that such evidence indicated that the victim had recanted her story. He further alleged that had it been available at the time he entered his plea, he would not have pled guilty because trial counsel could have impeached the victim at trial with her recantation.

The petitioner attached the "Facebook" postings as an exhibit to his petition. In the postings, which purportedly consist of an online conversation between the victim and "Calvino Inman," the victim explains that her mother was trying to get the petitioner locked up because the victim was only twelve and the petitioner was much older. She further states that the petitioner did not force her to do anything, that he wanted to have sexual intercourse with her but they "didn't go thru [sic] with it," and that they "started to" have sex but she "told him to stop and he did."

This court stayed the appeal of the trial court's denial of the petitioner's motion to withdraw his guilty plea pending disposition of the petition for writ of error coram nobis. On May 8, 2012, the trial court entered an order denying the petition for writ of error coram nobis. This court then waived the timely filing of the notice of appeal of the trial court's denial of the petition for writ of error coram nobis. We, therefore, now address the petitioner's claims regarding both rulings in this consolidated appeal.

## ANALYSIS

-4-

## I.  Denial of Motion to Withdraw Guilty Plea

The petitioner contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea, arguing that he was denied the effective assistance of trial counsel and that his plea was entered as a result of fear and misunderstanding, thereby rendering the plea unknowing and involuntary.

Tennessee Rule of Criminal Procedure 32(f)(1) provides that a trial court may grant a motion to withdraw a guilty plea "for any fair and just reason" before sentence is imposed, or to correct manifest injustice after the sentence is imposed but before the judgment becomes final.  Granting a motion to withdraw a guilty plea to correct manifest injustice may be warranted where (1) the plea was entered as a result of fear, fraud, or misunderstanding; (2) the State failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963); (3) the plea was not knowingly, understandingly, and voluntarily entered; or (4) the defendant was denied the effective assistance of counsel in connection with entering the plea.  State v. Crowe, 168 S.W.3d 731, 742 (Tenn. 2005).  It is the defendant's burden of establishing that the plea of guilty should be withdrawn to prevent "manifest injustice." State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).  The decision whether to grant a motion to withdraw a plea of guilty rests with the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  State v. Drake, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986).

To establish that he was denied the effective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness

under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The record in this case fully supports the trial court's findings that the petitioner received effective assistance of counsel and entered a knowing, understood, and voluntary guilty plea. The transcript of the guilty plea hearing reflects that the petitioner assured the trial court that he knew he did not have to enter a plea of guilty and was entitled to a trial by jury if he wished, that he understood the terms of the plea agreement, and that the prosecutor's recitation of the factual basis for his plea, that he sexually penetrated the less than thirteen-year-old victim, was substantially correct. At the evidentiary hearing, co-counsel testified that he and trial counsel "went through everything with" the petitioner during the meeting held at his office and that he explained to him in great detail the child rape statute and the strict liability nature of the crime. He said that the petitioner mentioned

a witness that he wanted them to talk to but never provided co-counsel with any further information about that, or any other, potential witness. Co-counsel described the damaging statement of admission given by the petitioner and explained why he did not think they would have been successful in suppressing the statement. He further testified that he and trial counsel explained the plea bargain agreement offered by the State and the potential sentences the petitioner faced if convicted of all the offenses with which he had been charged, some of which would involve mandatory consecutive sentencing. Finally, he testified that he did not push the petitioner to accept the offer and that, to his knowledge, co-counsel did not either. We conclude, therefore, that the trial court did not abuse its discretion in denying the petitioner's motion to withdraw his guilty plea.

## II. Denial of Petition for Writ of Error Coram Nobis

The petitioner also contends that the trial court erred by denying his petition for writ of error coram nobis. A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c) (2012).

The decision to grant or deny a petition for writ of error coram nobis based on newly discovered evidence lies within the sound discretion of the trial court. See Tenn. Code Ann. § 40-26-105; State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We review this issue, therefore, under an abuse of discretion standard.

In denying the petition, the trial court acknowledged that the Facebook materials raised issues that could have been the subject of cross-examination of witnesses at trial but concluded that, in light of the victim's explanation and the statement by the petitioner, it was not reasonably well satisfied that a different result might have been obtained had the

information been available at trial.

We find no abuse of discretion in the trial court's ruling. The statements purportedly made by the victim consist of her explanation as to why her mother was angry at the petitioner, her claims that she had tried to explain to her mother that the sexual encounter was her fault, and her account of how she and the petitioner had started to have sexual intercourse but did not go through with it. No specific details of what exactly transpired or at what point the victim and the petitioner stopped the sexual encounter are provided.

The petitioner, by contrast, told the police in his statement that he "finger[ed]" the victim and put his penis inside her vagina but "only did it for about a minute" and did not ejaculate. In light of that damaging statement, there is no reasonable basis for concluding that the result of the proceeding might have been different had the vague description of the sexual encounter, which was purportedly made by the victim, been available for the petitioner's use at trial. Accordingly, we affirm the dismissal of the petition for writ of error coram nobis.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court denying the petitioner's motion to withdraw his guilty plea and his petition for writ of error coram nobis.

_____
ALAN E. GLENN, JUDGE

-8-